Maria Jean DALE, Appellee,

v.

Ronald J. WELLER, D.O., Defendant,

Kevin Dale, Appellant.

No. 91–2588.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 10, 1992.

Decided Feb. 11, 1992.

Marion Wasinger, Hannibal, Mo., argued, for appellant.

J.C. Hambrick, Jr., Kansas City, Mo., argued (L.G. Copeland, Columbia, Mo., on brief), for appellee.

Before ARNOLD, Chief Judge, McMILLIAN, Circuit Judge, and WELLFORD,* Senior Circuit Judge.

WELLFORD, Senior Circuit Judge.

This case involves a dispute between Kevin Dale, an intervenor; Maria Jane Dale, the plaintiff; and the defendants, Ronald J. Weller, D.O., and the Moberly Regional Medical Center ("Moberly") located in Missouri. Mr. Dale appeals from the district court's denial of his motion to intervene under Fed.R.Civ.P. 24, motion to alter and amend under Fed.R.Civ.P. 59, and motion for relief from judgement under Fed. R.Civ.P. 60. Without reaching the merits of Mr. Dale's contentions, we REMAND this case to the district court to determine whether Mrs. Dale should be permitted to amend her complaint and to determine whether subject matter jurisdiction exists in this purported diversity case.

Kevin and Maria Jane Dale were married and had one daughter, Mikki Danielle Dale. Mrs. Dale had custody of the child, but Mikki visited Mr. Dale from time to time. The tragic facts of this case occurred soon after one of Mikki's visits with her father. When Mikki showed signs of stomach dis-

---

* The Honorable Harry W. Wellford, Senior Circuit Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation.

comfort, Mrs. Dale took her daughter to the Moberly Regional Medical Center. Ronald Weller, D.O., examined the child and advised Mrs. Dale to return home because Mikki was suffering from nothing more than a temper tantrum. After an initial protest, Mrs. Dale left the hospital. Mikki then suffered severe convulsions, went into a coma and died as the result of Methanol poisoning which allegedly could have been detected and treated if Weller and others at Moberly had acted prudently. Mrs. Dale alleged that Mikki ingested the toxic substance while visiting her father.

On May 12, 1988, Mrs. Dale initiated this wrongful death complaint against Dr. Weller, Moberly, Charles M. Edwards, M.D., and Mr. Dale, the decedent's father and the plaintiff's former husband. The district court dismissed the action against Mr. Dale on the basis of Missouri's parental immunity law. The remaining parties consented to having the case heard by a magistrate judge, who conducted a jury trial beginning on May 29, 1990. The magistrate judge entered a directed verdict for Dr. Edwards and the remaining claims proceeded to the jury. The jury then returned a verdict in favor of Mrs. Dale in the amount of $250,-000.00 against Dr. Weller and the complaint against Moberly was dismissed. Dr. Weller filed motions for a judgment notwithstanding the verdict and for a new trial, but both were denied. About the time the parties learned of the magistrate judge's denial of Dr. Weller's motions, they agreed to settle the dispute for $255,000 plus court costs. This agreement was later disputed and not effectuated.

On December 11, 1990, almost six months after the magistrate judge entered a judgment against Dr. Weller, Mr. Dale moved to intervene in the suit pursuant to Fed.R.Civ.P. 24(a). He maintained that he had a right as a parent under the relevant Missouri wrongful death statute to an apportionment of the settlement proceeds for Mikki's wrongful death. The magistrate judge denied Mr. Dale's motion to intervene on the basis of untimeliness, and stated that the judgment "is hereby apportioned solely to plaintiff Maria Dale." Mr. Dale then filed a motion under Fed.R.Civ.P.

59 to alter or amend the magistrate judge's order, and also a motion under Fed.R.Civ.P. 60 for relief from the judgment. The Magistrate judge subsequently denied both motions.

On February 14, 1991, Mrs. Dale and Dr. Weller agreed to settle the case for $257,-500.00 despite Mr. Dale's effort to share in any judgment. Mr. Dale now appeals the magistrate judge's rulings.

## SUBJECT MATTER JURISDICTION

■ The pivotal issue in this case is whether subject matter jurisdiction exists. Mrs. Dale, the plaintiff, alleged subject matter jurisdiction under diversity of citizenship plus amount in controversy pursuant to 28 U.S.C. § 1332. Mrs. Dale alleged that she was a "resident" of Kansas, defendant Weller was a "resident" of Maine and that defendant Mr. Dale was a "resident" of Missouri. Mrs. Dale also alleged that Moberly was incorporated and doing business in Missouri, but she failed to allege anything about Moberly's principal place of business. She also asserted that defendant Edwards was a "medical doctor practicing ... within the confines of the State of Missouri." Based on these allegations, Mrs. Dale asserted that complete diversity of citizenship existed.

Mr. Dale now contends, based on *Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir.1987), that subject matter jurisdiction does not exist. In *Sanders*, the plaintiff alleged the parties' "residency," not their "citizenship." Moreover, the plaintiff alleged the corporate defendants' places of incorporation, but failed to allege their principal places of business. *Id.* The district court *sua sponte* dismissed the plaintiff's case for lack of subject matter jurisdiction. *Id.* The plaintiff then requested leave to amend his complaint to correct the jurisdictional deficiencies. The district court denied the motion to amend and the plaintiff appealed.

This court noted:

We agree with the district court that the pleadings in the present case do not establish diversity jurisdiction. The com-

plaint states Sander's residency, but not his citizenship. Diversity jurisdiction requires that the parties be *"citizens* of different States." 28 U.S.C. § 1332(a)(1).... Further, the complaint fails to state the principal places of business of the corporate parties. "In order to adequately establish diversity jurisdiction, a complaint must set forth with specificity a corporate party's state of incorporation *and* its principal place of business. Where the plaintiff fails to state the place of incorporation or the principal place of business of a corporate party, the pleadings are inadequate to establish diversity." *Joiner v. Diamond M Drilling Co.*, 677 F.2d 1035, 1039 (5th Cir.1982).

*Sanders*, 823 F.2d at 216. After reiterating these pleading rules in diversity cases, we reversed because the district court should have granted leave to amend since the defendants' had not been prejudiced by the delay. *Id.* at 217.

We find that *Sanders* suggests the proper outcome of this case and that it requires a remand to explore adequately the question of subject matter jurisdiction. It does not alter our analysis that the lower court here did not dismiss *sua sponte* and that the plaintiff did not attempt to correct the jurisdictional deficiencies through an amended complaint. Neither do we hesitate to explore the jurisdictional question because none of the parties challenged jurisdiction prior to or during trial.[1]

■ Our holding today is not merely technical. From the record, we cannot determine whether diversity jurisdiction existed when the complaint or amended complaints were filed. Mrs. Dale claimed to be a resident of Kansas, but her interrogatory answers, which were given only eight months after the filing of the initial complaint, listed a home address in Missouri. Mrs. Dale, however, continued to allege residency in Kansas in her second amended complaint which was filed after the inter-

rogatory answers. These facts combined with the other deficiencies in the pleadings raise serious concerns that the district judge should address even though only one defendant below raised subject matter jurisdiction as an affirmative defense. Unlike personal jurisdiction, subject matter jurisdiction cannot be conferred by the parties by waiver or otherwise. *Rock Island Millwork Co. v. Hedges–Gough Lumber Co.*, 337 F.2d 24, 27 (8th Cir.1964). Mrs. Dale's arguments suggesting that Mr. Dale and other parties (or the court) may have waived jurisdiction are, therefore, without merit.

■ On remand, the district court must determine whether Mrs. Dale, in the interest of justice, should be allowed to amend her complaint under Fed.R.Civ.P. 15(a) and/or whether diversity jurisdiction exists. As we noted in *Sanders*, leave to amend should be liberally granted unless the other parties to the suit would be prejudiced. *See Sanders*, 823 F.2d at 217. If Mrs. Dale is allowed to amend her complaint, the district court should then determine whether the plaintiff was, at the pertinent time, a "citizen" of Kansas and whether complete diversity existed based on the citizenship of the other parties.

There are other questions which should be addressed by the district court upon remand. In the motion for intervention, Mr. Dale, who has not consented to trial by a magistrate judge, raised a question under Missouri law concerning participation in the judgment or the following settlement. If jurisdiction is found to exist, then the district court should address Mr. Dale's apportionment argument.

The case is REMANDED for further proceedings consistent with this opinion.

---

1. Dr. Edwards did raise the affirmative defense that "Maria J. Dale was a resident of the State of Missouri at the time said actions were brought" and therefore requisite diversity did not exist.

Moberly denied the allegation that Mrs. Dale was a resident of Kansas "because it is without sufficient information." Dr. Weller also denied this allegation in his first amended answer.